IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J.D.G. and TIBY S. GOMEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Civ. No. 09-502-SLR | |
| | ) | |
| COLONIAL SCHOOL DISTRICT and | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

---

J.D.G. and Tiby S. Gomez, Pro Se Plaintiffs.  New Castle, Delaware.

James H. McMackin, III, Esquire, Morris James LLP, Wilmington, Delaware.  Counsel for Defendant Colonial School District.

Catherine T. Hickey, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant Delaware Department of Education.

---

**MEMORANDUM OPINION**

Dated:  November _ , 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs J.D.G. ("J.G.") and Tiby S. Gomez ("Gomez") (together "plaintiffs"), who proceed pro se, filed this complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* and 14 Del. C. § 3120, against defendants Colonial School District, New Castle, Delaware ("the District"), and the Delaware Department of Education ("DDOE").[1]  (D.I. 2, 17)  Presently before the court are motions to dismiss, for summary judgment, to stay, and to properly title.  (D.I. 21, 33, 50, 51, 54, 56)  For the reasons set forth below, the court will grant the motion to dismiss; deny as moot plaintiffs' motion for summary judgment against the DDOE, the DDOE's motion to stay, and the District's motion to properly title; grant the District's motion for summary judgment; and deny plaintiffs' motion for summary judgment against the District.

## II. BACKGROUND

J.G. is a minor, disabled student with Down syndrome.[2]  Under the IDEA, he is eligible for special education and related services.  Gomez is J.G.'s mother.  During the relevant time period, J.G. was a student at the Gunning Bedford Middle School, a

---

[1]The amended complaint filed February 19, 2010, added the DDOE as a defendant. (D.I. 17)  The motion to amend the complaint sought to include "the DDOE and their agency the AHP (i.e., hearing panel) as a joinder party" to the original complaint, but only the DDOE was included in the caption of the amended complaint and only the DDOE was added as a party on the court docket. (*See* D.I. 17, ¶ 12) Contrary to plaintiffs' allegations, the hearing panel is not an agency of the DDOE.

[2]A congenital disorder, caused by the presence of an extra twenty-first chromosome, in which the affected person has mild to moderate mental retardation, short stature, and a flattened facial profile.  *The American Heritage Stedman's Medical Dictionary* 240 (2d ed. 2004).

school within the Colonial School District.[3]   Plaintiffs allege that they were discriminated

against at the onset of J.G.'s education and, again, on April 13, 2009, and that they

were not afforded due process rights and/or rights under the IDEA, as follows:[4]  (1) in

May 2005, J.G. was improperly reclassified from educable mentally disabled ("EMD") to

trainable mentally disabled ("TMD");[5] (2) on June 10, 2007, the Gunning Bedford Middle

School Individualized Education Plan ("IEP") Team ("IEP Team") and Gomez met and

agreed upon an IEP for the 2007/2008 school year, but the District failed to implement

the plan; (3) in June 2008, the IEP Team proposed an IEP for the 2008/2009 school

year without adequately completing the IEP for the 2007/2008 school year; and (4)

Gomez opposed the IEP for the 2008/2009 school year and maintains that the IEP

denies J.G. the right to a free appropriate public education ("FAPE").  (D.I. 2, ¶¶ 6, 9,

10-14)

On June 18, 2008, plaintiffs filed a due process complaint against the District with

the DDOE and requested completion of the IEP for the 2007/2008 year, establishment

---

[3]Plaintiffs' response to the District's motion for summary judgment requests J.G.'s removal from the control of defendants for J.G.'s "own protection before any additional harm is caused by defendants that is either emotional, mental, and physical damages." (D.I. 52)  The court was advised on November 17, 2009, that J.G. is currently enrolled at William Penn High School, also within the Colonial School District.

[4]Neither the complaint, nor the amended complaint, provide a specific onset date.

[5]In Delaware, mentally disabled children are classified for special education eligibility services, in part, according to their mental impairment, as follows:  (1) educable mental disability with an IQ of 50 to 70 +/to 5 points; (2) trainable mental disability with an IQ of 35 to 50 +/to 5 points; and (3) severe mental disability with an IQ below 35 and significant limitations in two or more areas of adaptive behavior, including communication, self care, home and school living, social and interpersonal, community use, self direction and coping, health and safety, functional academics, leisure, play and work.  14 Del. Admin. C. § 925.6.12.1.

of a 2008/2009 IEP, reevaluation of J.G.'s mentally disabled status, a temporary interim

placement, and private tutoring.  Upon the filing of the due process complaint, the "stay

put" provisions of the IDEA required that the 2007/2008 IEP continue in effect.[6]  20

U.S.C. § 1415(j).  The DDOE appointed a hearing panel ("hearing panel") to adjudicate

the complaint.[7]  Hearings were held on October 14, November 18, and December 3,

2008, and January 29, 2009.[8]

The hearing panel decided the following procedural and substantive issues:

1.  Was J.G. denied a timely resolution meeting?
2.  Was J.G. denied a pretrial conference?
3.  Was J.G. denied the right to present relevant witnesses?
4.  Was J.G. entitled to have the District pay for a psycho-education evaluation by an evaluator of his choice?
5.  Was J.G.'s speech and occupational therapist's evaluation improperly excluded from the evidence?
6.  Did J.G. request consecutive hearing dates and, if so, was the request improperly denied?
7.  Was the motion to recuse the second appointee as panel chair improperly denied?
8.  Was the requirement of written closing arguments violative of J.G.'s due process rights?
9.  Did the District comply with discovery requirements?
10.  Were the 2005/2006, 2006/2007, and 2007/2008 IEPs implemented?
11.  Was the draft 2008/2009 IEP reasonably calculated to confer meaningful education benefit to J.G.?

---

[6]The stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current education placement until the dispute with regard to their placement is ultimately resolved." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996).

[7]The hearing panel consisted of Norman E. Levine, Kenneth Rose, and Judith Mellen.  Levine chaired the panel.

[8]The five volume administrative record filed by the DDOE is sealed and consists of 2,724 pages, cited hereafter as "R-."  (D.I. 31, 32, R-1-2724)

Issues one through nine concern procedural matters, while issues ten and eleven concern substantive matters. The hearing panel made findings of fact and cited case law in support of its decision. It issued its decision on April 13, 2009, and found no violations of plaintiffs' procedural rights. As to the substantive issues, it found that the District proved by competent evidence that the 2007/2008 IEP was implemented and that the proposed 2008/2009 IEP was appropriate.

Plaintiffs were advised of their right to appeal either in the Family Court of the State of Delaware or this court. Plaintiffs timely appealed the hearing panel's decision to this court. (*Id.* at ¶ 6, 7, 15, 17, 18, ex.) They allege that, during the course of the hearing, the hearing panel denied and violated J.G.'s due process rights under the Fifth and Fourteenth Amendments and his rights as enumerated under 34 C.F.R. § 300. (D.I. 2)

The amended complaint alleges that the DDOE violated J.G.'s constitutional rights as a result of discriminatory practices by the hearing panel and its chair, its members having been appointed by the DDOE. Plaintiffs allege that the DDOE allowed the following discriminatory practices and negligence by the chair, who was not well-informed, when the hearing panel: (1) did not allow the examination of relevant witnesses by motion or subpoena; (2) did not allow plaintiffs to submit relevant evidence such as an independent speech therapist evaluation and occupational therapist report; (3) did not allow a public hearing or videotaping of the hearing; (4) did not allow an independent educational evaluation and reevaluation; (5) allowed into evidence the District's unsigned psycho-educational evaluation; (6) did not provide for an interim placement for the safety of J.G.; and (7) intentionally delayed the proceeding which took

-4-

nearly one year to litigate.  In addition, plaintiffs allege that the DDOE failed to conduct

an investigation and is negligent for allowing the District to continue to fall below the

minimum required standards in English, math, and reading.  Plaintiffs request payment

for an interim placement, related transportation, an educational reevaluation, and other

related special academic services during the pendency of this litigation.  They also

request payment for private school placement with special academic services for the

next six years.  (D.I. 17)

## III.  IDEA

J.G. is entitled to a FAPE based upon his unique educational needs pursuant to

20 U.S.C. § 1401(9) and 34 C.F.R. § 300.17.  The IDEA contemplates that school

districts will achieve these goals by designing and administering a program of

individualized instruction for each special education student set forth in an IEP.  20

U.S.C. §§ 1412(a)(4), 1414(d); *see also Board of Educ. v. Rowley*, 458 U.S. 176, 181-

82 (1982).  The IDEA does not set forth definite guidelines for the formulation of an IEP

but, at a minimum, an IEP "must be reasonably calculated to enable the child to receive

meaningful educational benefits in light of the student's intellectual potential." *Rowley*,

458 U.S. at 189.

Courts have characterized the IEP as the "centerpiece" of the IDEA's system for

delivering education to disabled children.  *Polk v. Central Susquehanna Intermediate

Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988) (quoting *Honig v. Doe*, 484 U.S. 305, 311

(1988)). "An IEP consists of a specific statement of a student's present abilities, goals

for improvement of the student's abilities, services designed to meet those goals, and a

timetable for reaching the goals by way of the services." *Holmes v. Millcreek Twp. Sch.*

*Dist.*, 205 F.3d 583, 589 (3d Cir. 2000) (citation omitted).  A team consisting of the

student's parents and teachers, a curriculum specialist from the local school district and,

if requested, a person with special knowledge or expertise regarding the student, must

develop an IEP.  20 U.S.C. § 1414(d)(1)(B).  The IEP team will review the IEP at least

annually to determine whether the stated goals for the student are being achieved.  *Id.*

at § 1414(d)(4).  When appropriate, the team will revise the IEP to address, among

other things, lack of progress, necessary changes arising from reevaluation of the child,

and parental input.  *Id.*

        The IDEA  provides that any party may present a complaint "with respect to any

matter relating to the identification, evaluation, or educational placement of the child, or

the provision of a [FAPE] to such child[.]"  20 U.S.C. § 1415(b)(6).  The filing of a

complaint gives rise to a resolution process, followed by a due process hearing, which is

conducted in compliance with state procedures.  *Id.* at § 1415(f)(1); 14 Del. Admin. C. §

926, *et seq.*  Under Delaware law, once a request for a hearing is initiated, the DDOE

Secretary appoints a three member hearing panel.  14 Del. C. §§ 3135, 3137; 14 Del.

Admin. C. § 926.11.2.  Following the hearing, the hearing panel issues its decision.  Any

party aggrieved by the findings and decision has the right to file a civil action in the

Family Court of the State of Delaware or in the United States District Court.  20 U.S.C. §

1415(g)(1); 14 Del. C. § 3142; 14 Del. Admin. C. § 926.16.1.

## IV. MOTION TO DISMISS

        The DDOE moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6),

raising specific grounds for dismissal, as follows:  (1) it is not a proper party to this

action; (2) it is immune from suit as to certain claims raised; (3) the hearing panel is not

an agency of the DDOE; (4) the hearing panel and its chair have judicial immunity; (5)
plaintiffs failed to exhaust their administrative remedies; (6) the court lacks subject
matter jurisdiction on the claims raised in the amended complaint; and (7) the amended
complaint fails to state a claim upon which relief may be granted.  (D.I. 21, 22)

## A. Standards of Review

### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for
lack of jurisdiction over the subject matter, or if a plaintiff lacks standing to raise the
claim.  Motions filed under Rule 12(b)(1) may present either a facial or factual challenge
to the court's subject matter jurisdiction.  In reviewing a facial challenge under Rule
12(b)(1), the standards relevant to Rule 12(b)(6) apply.  In this regard, the court must
accept all factual allegations in the complaint as true, and the court may only consider
the complaint and documents referenced in or attached to the complaint.  *Gould
Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In reviewing a
factual challenge to the court's subject matter jurisdiction, the court is not confined to
the allegations of the complaint, and the presumption of truthfulness does not attach to
the allegations in the complaint.  *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d
884, 891 (3d Cir. 1977).  Instead, the court may consider evidence outside the
pleadings, including affidavits, depositions and testimony, to resolve any factual issues
bearing on jurisdiction.  *Gotha v. United States*, 115 F.3d 176; 179 (3d Cir. 1997).  Once
the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears
the burden of proving that jurisdiction exists.  *Mortensen*, 549 F.2d at 891.

-7-

## 2. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiffs proceed *pro se*, their pleadings are liberally construed and their complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.–, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. In other words, the complaint must do more than allege plaintiffs' entitlement to relief; rather, it must "show" such an entitlement with its facts. A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant

-8-

has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Discussion

Paragraphs one through eight and eleven of the amended complaint refer to actions taken by the hearing panel. The DDOE argues that, although it is responsible for conducting the due process hearing pursuant to 20 U.S.C. § 1415(f)(1)(A), the DDOE has no control over the actions of the chair or the hearing panel; it cannot overturn its decisions or offer plaintiffs the relief sought and, therefore, dismissal is appropriate.

To the extent that plaintiffs seek to hold the DDOE responsible for the actions of the hearing panel, those claims fail. The DDOE is statutorily required to establish a process that complies with the IDEA, and to ensure its requirements are fulfilled. *See* 20 U.S.C. § 1415; 14 Del. Admin. C. § 926. The DDOE appoints a three member panel of impartial hearing officers who are not employees of the DDOE and who also do not have a personal or professional interest that conflicts with the members' objectivity in the hearing. 14 Del. Admin. C. §§ 926.11.2, 926.11.3. The hearing panel's decision is final and the only avenue of review available is by filing a civil action. *Id.* at § 926.14.1. Because the IDEA's due process system isolates the DDOE from the decision of the

-9-

independent members of the hearing panel, "[l]iability may not flow from decisions over which State Defendants have no control and cannot legally influence ." *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001). Accordingly, the general rule is that the actions of individual hearing officers will not impute IDEA liability to state defendants. *See Pachl v. Seagren*, 373 F. Supp. 2d 969, 980 (D. Minn. 2005); *Lillebask v. Sergi*, 117 F. Supp. 2d 182, 198 (D. Conn. 2000); *Fritschle v. Andes*, 25 F. Supp. 2d 699, 705 (D. Md. 1998). The DDOE has no power over the hearing officers or the hearing panel's rulings and, therefore, it cannot be held liable for the actions taken in issuing the hearing panel decision.[9]

The DDOE takes the position that, because the amended complaint does not assert any systemic issues or failures, dismissal is appropriate. State educational agencies may be responsible for violations of the IDEA when the state agency in some way "fail[s] 'to comply with its duty to assure that the IDEA's substantive requirements are implemented.'" *John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864-65 (8th Cir. 2001) (quoting *Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997)); *See Beth V. v. Carroll*, 87 F.3d 80 (3d Cir. 1995). "[S]ystemic violation" of the State's responsibilities under the IDEA might give rise to state liability. *See Reinholdson v. Minnesota,* 346 F.3d 847, 851 (8th Cir. 2003). A systemic claim is one which "implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the [IDEA]." *Mrs. M. v. Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 133 n.12 (D. Conn. 2000).

---

[9]The court sees no need to address the issue of judicial immunity inasmuch as the individual hearing panel members are not named defendants.

-10-

Plaintiffs allege that the DDOE appointed panel members who did not properly conduct the due process hearing and who allowed discriminatory practices. They further allege negligence by the hearing panel chair by reason of his not being well informed of the law. In addition, it is alleged that the DDOE failed to conduct an investigation as is required by Title 20. Finally, plaintiffs allege that the DDOE negligently allowed the District to fall below minimum required standards for special education in English, language arts, and math. (D.I. 15, ¶¶ 8, 9, 10) These allegations fail to meet the threshold pleading requirements as required by *Iqbal* and *Twombly* sufficient to raise a systemic violation claim. Nor does the amended complaint contain adequate factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Finally, the allegations are directed towards the individual claim of J.G. Hence, they fail to rise to a level of systemic proportions. Accordingly, the court will grant DDOE's motion to dismiss this claim.[10]

------

[10]The DDOE also moves for dismissal on the grounds that any IDEA claim must be dismissed for plaintiffs' failure to exhaust administrative remedies. Once a decision has been rendered at a due process hearing, administrative remedies are deemed exhausted, and a party has the right to appeal the due process hearing decision by bringing a civil action in any state or federal court. 20 U.S.C. § 1415(i). There are four exceptions to the IDEA's exhaustion requirement, where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant the relief sought; or (4) when exhaustion would cause severe or irreparable harm to a party. *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir.1994) (citations omitted); *see also Honig*, 484 U.S. at 326-27 ("Judicial review is normally not available under [the IDEA] until all administrative proceedings are completed, but . . . parents may bypass the administrative process where exhaustion would be futile or inadequate."). In addition, plaintiffs may "be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *Beth V.*, 87 F.3d at 89. Plaintiffs attempted, but failed, to raise claims that implicate the integrity or the reliability of the IDEA dispute resolution process. Although there does not appear to be an

-11-

The DDOE moves for dismissal as to any non-IDEA claims raised against it by reason of Eleventh Amendment immunity.  The DDOE does not identify what it perceives as potential "non-IDEA claims".  The amended complaint mentions 20 U.S.C. § 1414, 34 C.F.R. §§ 99.22(d) and 300.509, and refers to Title 34 of the Code of Federal Regulations and Title 20 of the United Stated Code.  It also refers, generally, to violating J.G.'s constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution as well as discriminatory practices.[11]  In their response, plaintiffs concede that the DDOE is immune as to non-IDEA claims, but reiterate that their claim against the DDOE "is an IDEA claim[] for the procedural flaws and systemic claim."  (D.I. 49, ¶ 5)

To the extent that plaintiffs raise claims against the DDOE alleging civil rights violations pursuant to 42 U.S.C. § 1983, said claims are barred by the State's Eleventh Amendment immunity.[12]  *See MCI Telecom. Corp. v. Bell Atl. of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984);

---

administrative forum wherein plaintiffs could have challenged the actions of the DDOE causing futility of exhaustion, the court has determined that plaintiffs have failed to state a claim against the DDOE.  For the above reasons, the court will deny as moot the DDOE's motion to dismiss the IDEA claims for failure to exhaust administrative remedies.

[11]These allegations raise the specter of civil rights violation pursuant to 42 U.S.C. § 1983.  In the Third Circuit's view, § 1983 provides no remedy for violations of the IDEA. *Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009)

[12]To the extent plaintiffs allege a § 1983 claim against the hearing panel, the claim also fails.  To state a viable § 1983 claim, a plaintiff must allege facts showing a deprivation of a constitutional right, privilege or immunity by a person acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).  The hearing panel is not a person within the meaning of § 1983.

-12-

*Edelman v. Jordan*, 415 U.S. 651 (1974). The State has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (not published) (citations omitted). For the above reasons, the court will grant the motion to dismiss any non-IDEA claims raised against the DDOE as it is immune from suit.

Finally, in what appears to be an abundance of caution, the DDOE moves to dismiss any potential failure to train claims. Plaintiffs did not respond to this portion of the motion to dismiss but, in a separate motion seeking partial summary judgment, acknowledge that their claims are not about training but violations of procedural laws. (D.I. 50, ¶ 6) Therefore, the court will deny as moot the motion to dismiss potential failure to train claims.

For the above reasons, the court will grant the DDOE's motion to dismiss. The court takes into consideration plaintiffs' pro se status. Nonetheless, it finds that amendment of the complaint would be futile. *See Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002); *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976).

On July 6, 2010, plaintiffs filed a motion for partial summary judgment against the DDOE. (D.I. 50) On July 20, 2010, the DDOE moved to stay the proceedings on plaintiffs' pending motion on the basis that the claims as alleged by plaintiffs are not ripe for summary judgment due to the pending motion to dismiss. (D. I. 54) As discussed above, the court will grant the DDOE's motion to dismiss. Accordingly, both plaintiffs'

-13-

motion for summary judgment and the DDOE's motion to stay will be denied as moot.
(D.I. 50, 54)

## V. CROSS-MOTIONS FOR SUMMARY JUDGMENT

The District and plaintiffs filed cross-motions for summary judgment.[13]  (D.I. 33,
51)  The District asks the court to afford considerable weight to the hearing panel's
findings given its expertise, demonstrated knowledge of the evidence, and correct
application of the law to the facts.  More particularly, the District argues that summary
judgment is appropriate on the grounds that:  (1) the 2007/2008 IEP was implemented;
(2) the proposed 2008/2009 IEP was reasonably calculated to provide meaningful
educational benefit; (3) J.G. is properly identified as eligible to receive special education
services under the TMD classification because the evaluation data supports the
classification; (4) reimbursement to "make J.G. whole" must be denied because the
parents offered no evidence of expenses; (5) the request for an award for discrimination
for constitutional rights violations must be denied because there is no evidence of
discrimination; (6) there is no basis in the law to reimburse pro se parents for attorney
fees; (7) the request for a reevaluation must be denied because the evaluation at issue
was performed appropriately and there is no evidence to the contrary; (8) the request
for private placement must be denied because the District met its burden of showing
that J.G.'s needs can be met in the District and the parents offered no evidence to the

---

[13]The District also moves to properly title plaintiffs' cross-motion for summary
judgment on the grounds that it was not timely filed and must be stricken or, in the
alternative, that the pleading be considered as an answering brief to the District's
motion for summary judgment.  (D.I. 56)  The court considers the pleading as a cross-
motion for summary judgment and will deny as moot the District's motion.

contrary or evidence that private placement is appropriate; and (8) plaintiffs' conduct warrants denial of relief.

Plaintiffs oppose the motion and move for summary judgment against the District. While plaintiffs seek summary judgment on the classification issue and deprivation of a FAPE as raised in the complaint, they also seek summary judgment on certain procedural issues, as follows:  (1) the administrative hearing was intentionally delayed until the end of the school year; (2) the chair violated procedural rules when he applied the statute of limitations; (3) the panel considered an unsigned, false evaluation submitted by the school psychologist; (4) subpoenas were quashed and plaintiffs were not allowed to examine certain witnesses; and (5) discovery was not conducted in accordance with the rules of procedure.

## A.  Standard of Review

The procedure for reviewing a state administrative panel's decision in an IDEA case differs from the typical standard of review applied in summary judgment proceedings.  In an IDEA case, the court applies a "modified de novo review" to the decision of the state administrative panel. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006).  The court should not "substitute [its] own notions of sound education policy for those of school authorities." *Rowley*, 458 U.S. at 206.  The court exercises plenary review over the legal conclusions of the administrative panel, but must give "due weight" to its factual findings. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995).  Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct" and, "[i]f a reviewing court fails to

-15-

adhere to them, it is obliged to explain why." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003).

The credibility determinations of the hearing panel are also entitled to special weight. *Id.* This means "that a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Shore Regional,* 381 F.3d 199 (citation omitted). "The word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court. *Id.* (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985). The Third Circuit requires that, if the district court does not follow the agency's ruling, it must provide an explanation of why its decision differs from that of the agency. *Carlisle Area Sch.,* 62 F.3d at 527 (citations omitted).

## B. Discussion

### 1. Discrimination in the context of procedural violations

Plaintiffs raise a number of alleged procedural violations. In essence, plaintiffs assert that discrimination occurred and they did not receive a fair hearing. A procedural violation does not constitute the denial of a FAPE unless the procedural inadequacy: "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516 (2007). In addition, a procedural violation alone does not suffice to support a compensatory education award. *See* 20 U.S.C. § 1415(f)(3)(E)(ii). *See also, e.g., C.M. v. Board of Educ. of Union County Reg'l*

-16-

*High Sch. Dist.*, 128 F. App'x 876, 881 (3d Cir. 2005) (not published) ("Other circuits have established that only those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable") (citations omitted).

The court reviewed each page of the voluminous, five volume administrative record. Plaintiffs received substantial procedural safeguards available under the IDEA and Delaware law. Plaintiffs were afforded with notice and the opportunity to be heard. They subpoenaed witnesses, presented evidence, examined their witnesses, and cross-examined adverse witnesses. Although atypical, upon their request, plaintiffs were allowed to videotape the proceedings during the hearing unless a witness objected. Plaintiffs received copies of the transcript and were allowed to submit written closing arguments. The court will discuss the specific assignments of error below. However, when viewing the hearing as a whole, the court cannot conclude there were procedural violations that constituted the denial of a FAPE.

### a. Delay of administrative hearing

Plaintiffs contend that the due process administrative hearing was intentionally delayed until the end of the school year. The District responds that no relief is due for any alleged timeliness issues.

### (1) Resolution session/meeting

The IDEA provides that parties shall hold a resolution session or meeting within fifteen days from receiving notice of the parents' complaint. 20 U.S.C. § 1415(f)(1); 34 C.F.R. § 300.510. Following receipt of the due process complaint on June 19, 2008, the District wrote the parents on June 26, 2008, and inquired if they wished to participate in

-17-

a resolution session. (R-1513, 1522)  The parents responded on July 10, 2010, and did

not express a willingness to participate in the session, which they described as an

"optional resolution meeting." (R-1781)  On July 16, 2008, the District advised the chair

of its position that the parents refused to participate in the mandatory resolution session

and sought dismissal of the due process complaint. (R-1513-14)  On July 18, 2008, the

chair noted J.G.'s parents' apparent confusion between a resolution meeting and

mediation and directed the parties to communicate and advise the chair of efforts to

resolve the issue. (R-1511)  On July 28, 2008, the District advised the chair of the

parties' efforts to hold a resolution session and, in particular, that J.G.'s mother

indicated she wished to pursue mediation and was unwilling to pursue a resolution

session. (R-1499)  On July 30, 2008, J.G.'s parents wrote to the District and indicated

that they should have a resolution meeting, they expected one, noted that the District

failed to extend a formal notice of the scheduled meeting and that, in avoiding the

"resolution meeting," the timeline had expired and the District was in default. (R-1497-

98)  On August 6, 2008, the District was informed that plaintiffs agreed to a resolution

meeting and, on August 20, 2008, J.G.'s parents informed the chair that an

unsuccessful resolution meeting was held on August 14, 2008, some forty days behind

schedule. (R-1473, 1712)  On September 3, 2008, the District responded to the

parents' allegations that they were not offered a timely resolution meeting and, on

September 7, 2008, J.G.'s parents disputed the District's position. (R-1454, 1464)  The

parties were advised by the chair that the issue of the alleged violation of the resolution

meeting requirement would be addressed at the due process hearing scheduled to

begin on September 18, 2008.

The hearing panel found that, although the resolution meeting was not held within fifteen days, the District was not responsible for the delay, the parents were not entitled to relief and, even if they were, their remedy was to request the hearing panel to order the forty-five day time period to commence.  (R-2716)  It is undisputed that the resolution meeting did not take place within the statutory fifteen day period. Nonetheless, the record supports the hearing panel's findings, and it did not err in concluding that the District was not responsible for the delay.  As discussed below, the 2007/2008 IEP was implemented and the proposed 2008/2009 IEP was substantively appropriate.  Although plaintiffs contend that J.G. was deprived of educational benefits, this alleged deprivation cannot reasonably be traced to the delay in holding the resolution meeting/session.  For these reasons, the court finds that the District substantially satisfied the IDEA's procedural requirements.

### (2)  Due process hearing

Once a due process complaint is received, the District has thirty days to resolve it before the due process hearing may occur.  20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b)(1).  A final decision must be reached in the hearing no more than forty-five days after the thirty-day period ends or within adjusted time periods as set forth in 34 C.F.R. § 300.510(c).  34 C.F.R. § 300.515(a)(1); 14 Del. Admin. C. § 926.15.1. Delaware regulations include an additional state imposed policy that the "hearing panel, for good cause, may grant specific extensions of time beyond the periods set out in 15.1 at the request of either party; provided, however, that a final decision shall be reached and a copy of the decision mailed to each of the parties within fifteen days of the date of the hearing or, where applicable, within fifteen days of the completion of post-hearing

-19-

argument. In granting specific extensions, the panel shall ensure that a party's right to redress is in no way diminished or unnecessarily delayed." 14 Del. Admin. C. § 926.15.2.

Several events led to delay. On July 30, 2008, plaintiffs moved to recuse Noel C. Burnham ("Burnham"), the first hearing panel chair.[14] (R-1721) Burnham recused the next day and, on August 5, 2008, Levine was appointed as the chair.[15] (R-1718) Levine initially scheduled the due process hearing to take place over two days; September 18, 2008 and October 14, 2008.[16] (R-7, 1457) Later the hearing was expanded to four days and began on October 14, 2008, following plaintiffs' request for a continuance. (R-1440) It appears that the due process hearing had not been scheduled until September due to the recusal of the first chair and issues surrounding the resolution meeting. (*See supra* § V, ¶ B.1.a.(1)) Day two of the hearing was rescheduled to November 18, 2008.[17] (R-1666) Prior to commencement of the second

---

[14]Plaintiffs also sought for recusal of a panel member. He recused and a new individual was appointed to the panel. (R-1726, R-1771)

[15]Plaintiffs also sought recusal of the second appointed chair. (R-2717)

[16]On September 1, 2008, plaintiffs requested that the hearing take place on two consecutive days. (R-1700) They were advised that the only way a two-day consecutive hearing could take place was to reschedule after October 14, 2008, which would result in additional delay. (R-1688) The hearing panel found that plaintiffs did not request consecutive hearing dates and that plaintiffs were adamant about no hearings on Mondays and Fridays due to Gomez's work schedule. (R-2717) The court scoured the record but was unable to find documentation to support a finding that plaintiffs requested that hearings not take place on Mondays or Fridays. Nonetheless, the hearings took place on Tuesday, Wednesday and Thursday.

[17]On the first hearing date, the chair reiterated that it was a two-day hearing; in October and November. (R-7) Due to the lengthy examination of witnesses, the hearing took four days. On day three of the hearing, plaintiffs complained they would only have one day (i.e., day four) to examine J.G. and all their witnesses. The chair

hearing day, Levine scheduled a third hearing date to take place on December 3, 2008.
(R-1636,1638) During the November hearing, plaintiffs advised the hearing panel that
they had scheduled an independent evaluation of J.G. but it would not be ready by
December 3, 2008.[18] (R-134) It was determined that an additional hearing date would
be added. (R-223)

Ultimately, the due process hearing took place over four non-consecutive hearing
days, with the final hearing day on January 29, 2009. The parties were provided copies
of the final hearing transcripts on February 10, 2009, and given until March 16, 2009 to
submit written closing summations. (R-1331) The parties agreed on the record to the
thirty-day time submission. (R-728) During the hearing, the chair indicated that it would
probably take longer than fifteen days to issue the decision, noting the length of time
and the desire to "get it right." (R-730) The parties submitted their briefs on March 11
and 16, 2009. (R-2615-2707) Thereafter, the hearing panel issued its decision on April
13, 2009, some eight months after the August 14, 2008 resolution meeting/session, but
only one month following submission of the briefs.

---

responded that plaintiffs had used one-half to two-thirds of the entire three day hearing
time during cross-examination. (R-348-49, 388) The record reflects that plaintiffs did
not use all of the time allotted them on the final hearing day.

[18]In this regard, the District moves for summary judgment in the context of
plaintiffs' claim of discrimination. The record does not reflect discrimination against
plaintiffs. Although plaintiffs were not allowed to submit the expert's affidavit or report in
lieu of testimony, they made no such request until the morning of day four of the
hearing. The chair noted this was the first he had learned of plaintiffs' request and
advised plaintiffs they could have filed a motion for telephone testimony or filed a motion
for the expert's deposition outside of the hearing. (R-388-89) The chair ruled that he
would not receive an expert report from an individual who was not present to be
questioned or cross-examined. (R-395) Based on the foregoing, the court finds
summary judgment in favor of the District is appropriate as to this issue.

The delay in the administrative hearing was caused by many factors, including requests for continuances, scheduling difficulties, and the length of the hearing. When viewing all the circumstances and considering Delaware administrative rules, the court concludes that there was no unnecessary delay in issuing the hearing panel's decision. The administrative record is extraordinarily large and the hearing panel's decision was issued thirty days from the receipt of the parties' briefs; a mere fifteen days from the time required by Delaware administrative rules. Plaintiffs played some role in the delays but, even if they had not, they would not be entitled to relief. There is nothing in the record that reflects, or even suggests, an intentional delay of the due process hearing. For the above reasons, the court will deny plaintiffs' motion for summary judgment as to this issue.

### b. Psychologist's report

Plaintiffs contend that the panel should not have considered an unsigned, false evaluation submitted by the school psychologist. In May 2008, the psychologist prepared a psychoeducational evaluation of J.G. (R-2187-2195) The evaluation submitted as exhibits 27 and 29 are not signed. The psychologist testified that he signed the report and it was unclear why the exhibits are not signed. (R-156-157) The psychologist testified that he authored the evaluation and that it was authentic. (R-139) Finally, plaintiffs extensively cross-examined the psychologist. There was no error by the hearing panel in considering the evaluation. Therefore, the court will deny plaintiffs' motion for summary judgment as to this issue.

-22-

### c. Witnesses

Plaintiffs argue they were not allowed to examine certain witnesses when subpoenas were quashed, including those directed to educational diagnostician Karen Clark ("Clark"), director of student services Sharon Keller ("Keller"), and J.G.'s former teacher Derra McDonough ("McDonough").  The District moves for summary judgment on this issue, but raises it in the context of discrimination.  The hearing panel found that plaintiffs were not denied the right to present relevant witnesses.  Indeed, plaintiffs squandered hearing time on pretrial issues; when the District presented its case, plaintiffs' cross-examinations occupied at least two-thirds of the hearing time; and when plaintiffs presented their case, their direct examination occupied approximately ninety-percent of the hearing time.  (R-2716)

Initially, the court notes that Keller was called as a witness by the District and she was extensively cross-examined by plaintiffs.  The chair quashed subpoenas directed to three witnesses:  Clark, McDonough, and speech therapist Anne Langsdorf ("Langsdorf") on the grounds that there was not a sufficient offer of proof that their testimony would produce relevant evidence.[19]  (R-1366)  Plaintiffs contend that the chair inappropriately quashed the subpoena for McDonough "because the teachers are very relevant in the learning process" and McDonough was directly involved in the process when she participated in IEP meetings held in May and June 2007.  (R-1366,  2150, 2151, 2160).  McDonough, however, was not J.G.'s teacher during the relevant time

_____

[19]Plaintiffs do not assign error with regard to Langsdorf.

period and was not responsible either for implementing the 2007/2008 IEP or preparing the proposed 2008/2009 IEP.

Plaintiffs did not offer evidence to support their position that the subpoena directed to Clark should not have been quashed.  The record reflects that the District moved to quash the subpoena directed to Clark on the grounds that plaintiffs sought to elicit irrelevant and cumulative information previously elicited during the testimony of witnesses Keller and speech language pathologist Mary Kay Mills ("Mills").  The chair granted the motion.

Finally, the chair denied a motion to quash subpoenas directed towards witnesses principal Dusty Blakely ("Blakely") and assistant principal Nancy Cooper ("Cooper").  On December 3, 2008, the third hearing day, plaintiffs advised the hearing panel they would call Tonya Saunders, Cooper, and Blakely, in that order.  (R-264) Blakely testified on the fourth hearing day, January 29, 2009.  (R-423)  Plaintiffs called other witnesses that day, but did not call Cooper.

There is nothing in the record to support a finding that the chair erred in quashing the subpoenas at issue.  Accordingly, the court will grant the District's motion for summary judgment and will deny plaintiffs' motion for summary judgment as to this issue.

### d.  Discovery

Plaintiffs argue that the District did not produce discovery in a timely fashion and waited until the first day of the hearing before providing the same.  The hearing panel found no evidence that the District did not comply with discovery requests as alleged by

plaintiffs and that it was plaintiffs who repeatedly failed to comply with discovery.  (R-2717)

Plaintiffs filed a motion to compel production of documents on October 7, 2008. (R-1424)  Following argument by the parties on the first hearing day, the chair made rulings on discovery issues.  In reviewing the record, the court discerns no error in the chair's discovery rulings.  Accordingly, the court will deny plaintiffs' motion for summary judgment as to this issue.

### 2. Classification

Plaintiffs and the District move for summary judgment on the classification issue. Plaintiffs advance several alleged errors with regard to the classification of J.G.  They argue that the chair violated procedural rules in applying the statute of limitations to the classification issue.  J.G.'s classification was changed in 2005 from EMD to TMD, but plaintiffs did not file their due process complaint until June 18, 2008, some three years later.  The statute of limitations under the IDEA is two years.  20 U.S.C. § 1415(b)(6); 14 Del. Admin. C. § 926.7.2.  During the due process hearing and in their written closing argument, plaintiffs argued that the admission of evidence regarding classification and evaluations "opened the door" to consider the legality of the classification change despite the two-year limitations period.  (R-642,1827)

The District asserted the statute of limitations defense as early as September 19, 2008.  (R-1656)  "Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy;" failure to raise the statute of limitations in the answer will not necessarily result in waiver if the defense is raised "at the earliest practicable moment thereafter."  *Robinson v. Johnson*, 313 F.3d 128, 137

-25-

(3d Cir. 2002). Statutes of limitations are waivable, but nothing in the record suggests that the District waived the statute of limitations defense. *See United States v. Bendolph*, 409 F.3d 155, 164 (3d Cir. 2005). To the contrary, the record reflects that the District raised the statute of limitations defense early on and consistently argued that the classification issue was time-barred. Accordingly, the hearing panel did not err in determining that the classification issue was time-barred.

Moreover, despite the hearing panel's finding that the issue was time-barred, it addressed the merits of plaintiffs' claim that J.G.'s classification was changed without parental consent. The hearing panel found that J.G.'s father signed the IEP agreeing to the classification change. Indeed, documents submitted into evidence indicate that J.G.'s father signed the IEP. (R-1547-1562) Plaintiffs did not introduce any evidence that it was not the father's signature. Notably, J.G.'s father was present each day of the due process hearing and did not testify. Plaintiffs now argue that the father's signature is false. This position is unavailing and not supported by the evidence of record.

Plaintiffs similarly argue that J.G.'s reclassification was conducted illegally and did not meet IDEA requirements. The hearing panel found that the 2005 change in J.G.'s classification from EMD to TMD was based upon objective assessments. J.G. was reevaluated as recently as 2008. The 2008 evaluation, like the 2005 evaluation, classifies J.G. as TMD. The evidence of record indicates that J.G.'s classification is based upon the following factors: past evaluations; level of performance at the time of the assessment; slight score elevation as a result of a raw score or one on one sub-test; and lower limits results on a Wechsler Abbreviated Scale of Intelligence (i.e., WASI). (R-2186-95) Of import is that the hearing panel found that it made no difference to the

-26-

development of the IEP whether J.G. was classified as EMD or TMD because the IEP is

based upon J.G.'s individual needs. The court defers to the findings of the hearing

panel. For the above reasons, the court will grant summary judgment as to this issue in

favor of the District and against plaintiffs.

### 3. Implementation of the 2007/2008 IEP

Plaintiffs and the District move for summary judgment on the issue of

implementation of the 2007/2008 IEP. Plaintiffs contend the District failed to properly

implement or complete the 2008/2008 IEP because its goals were not met. They further

argue that the District was aware that J.G. would receive no more than a de minimus

educational benefit. Conversely, the District contends that it implemented the

2007/2008 IEP.

A district has an obligation to implement a child's IEP under both federal and

state law. *Fisher ex rel. T.C. v. Stafford Twp. Bd. of Educ.*, 289 F. App'x 520, 524 (3d

Cir. 2008) (not published) (citing 20 U.S.C. § 1412(a)(4)). A party seeking to challenge

the "implementation of an IEP must show more than a de minimis failure to implement

all elements of that IEP, and, instead, must demonstrate that the school board or other

authorities failed to implement substantial or significant provisions of the IEP." *Id.*

(quoting *Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341, 349 (5th Cir. 2000)).

Flexibility to implement an IEP is maintained, yet the school district is accountable for

"confer[ring] some educational benefit upon the handicapped child," as required by the

IDEA. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir.

2000) (citing *Rowley*, 458 U.S. at 188-89). The District is required to review each child's

IEP at least annually to determine whether the child is reaching the stated goals, and

-27-

the IEP team is to revise the IEP to address lack of progress and make necessary changes arising from reevaluation of the child and parental input.  20 U.S.C. § 1414(d)(4)(A); *S.H. v. State-Operated Sch. Dist. of City of Newark,* 336 F.3d 260, 265 (3d Cir. 2003).

The hearing panel found the goals and objectives in the 2007/2008 IEP that remained in effect as a result of the "stay put" provisions were implemented as indicated by the evidence introduced by the District.  The record reflects that plaintiffs did not refute the District's proffered evidence.  Instead, plaintiffs return to the classification issue to argue that it deprived J.G. of a meaningful IEP and the educational benefits to which he is entitled.

Plaintiffs' motion for summary judgment speaks in generalities and, other than the classification assertions, does not provide specifics on why they believe the 2007/2008 IEP was not properly implemented.  (*See supra* § V, ¶ B.2.)  They did, however, raise various issues during the due process hearing.  For example, plaintiffs argued that J.G.'s fourth quarter evaluation was fabricated.  J.G.'s homeroom teacher testified that she reviewed his record prior to inputting values from the fourth quarter, but that there was delay in inputting the information due to building construction and an inability to access the records, and the dispute between the parties which arose during the drafting of the 2008/2009 IEP.  (R-21, 274, 2078-87)  J.G.'s homeroom teacher provided uncontradicted testimony that she implemented each and every page of the IEP, and she discussed each objective and J.G.'s progress towards each objective.  (R-267, 269-73, 276-82, 2078-08)  The occupational therapist and speech and language pathologist both provided uncontradicted testimony that the goals related to their

-28-

specialities were provided as required in the IEP.  (R-74-75, 80, 84, 90, 191-92, 282-83, 2078-87, 2254-309, 2331-36)  The hearing panel found that their testimony corroborated that of J.G.'s homeroom teacher.

The hearing panel additionally found that the District went beyond the implementation of the IEP and provided J.G. extra instruction, attention, and assistance, and also honored the request to introduce ninety new words to J.G. each marking period.  The court is aware that plaintiffs have complained bitterly that the 2007/20008 IEP was not implemented.  Their position, however, is not borne out by the administrative record.  For the above reasons, the court finds no reason to depart from the hearing panel's findings and defers to its findings.  Therefore, the court will grant the District's motion for summary judgment on this issue and will deny plaintiffs' motion for summary judgment on the same issue.

### 4. Appropriateness of the proposed 2008/2009 IEP

Plaintiffs and the District move for summary judgment on the issue of the appropriateness of the proposed 2008/2009 IEP.  Plaintiffs argue that the District was aware that the IEP was inappropriate and did nothing to correct the situation; moreover, the District erred in planning an IEP for the next year without completion of the previous year's goals.  The District argues that the proposed IEP was reasonably calculated to provide meaningful educational benefit to J.G.

States must offer "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *Rowley*, 458 U.S. at 188-89.  The program of education offered to the student does not have to be the best available, but must "confer

-29-

some educational benefit." *Rowley*, 458 U.S. at 200. The "IDEA's central goal is that disabled students receive an appropriate education, not merely an appropriate IEP." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 250 (3d Cir. 1999).

An IEP is a detailed instruction plan tailored to address the child's educational needs, and serves as the "primary mechanism" to ensure that a disabled child receives a FAPE. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995); *see also* 20 U.S.C. §§ 1401(14), 1414(d). An IEP must provide for "significant learning" and confer a "meaningful benefit" to satisfy the requirements of a FAPE. *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000). The IEP must be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. It must provide more than a de minimis educational benefit, but school districts are not required to provide the optimal level of services. *Neena S. v. School Dist. of Phila.*, Civ. A. No. 05-5404, 2008 WL 5273546, at *11 (E.D. Pa. Dec.19, 2008). The determination of an IEP's appropriateness must be made at the time the IEP is offered and not at some later date. *Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir.1993). Whether an IEP is appropriate is a factual question. *S.H.*, 336 F.3d at 271 (citation omitted).

Generally, a school district bears the burden of proving that it has satisfied its obligations under the IDEA. *See Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995). However, the burden of establishing the inadequacy of the proposed IEP rests on the challenging party.[20] *Schaffer v. Weast,* 546 U.S. 49, 62 (2005); *L.E. v.*

---

[20]Delaware law provides that the District bears the burden of proof and persuasion during IDEA administrative hearings. 14 Del. C. §§ 3135, 3140.

*Ramsey Bd. Of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006) (recognizing that after *Schaffer*, burden of proof now falls on party challenging IEP). Accordingly, the burden of proof as to the adequacy of the IEP rests upon on the parents.

The hearing panel found that: (1) the proposed 2008/2009 IEP is addressed toward training J.G. to function independently and in the community; (2) the goals are important because of J.G.'s age and the necessity to transition him into independent living; (3) the 2008/2009 IEP was formulated based upon current, reliable data available to the IEP team and was individualized for J.G. with reasonable, defined goals and objectives; (4) the parents' concerns, where appropriate, were included in the proposed IEP; (5) the proposed IEP builds upon J.G.'s existing knowledge and is calculated to build upon his strengths; (6) the proposed IEP is reasonably calculated to meet J.G.'s needs and addresses goals and objectives which are built upon J.G.'s knowledge, and which are measurable and include short term objectives and long term goals.

The administrative record indicates that the IEP team considered current information in formulating the proposed IEP. (R29-30) Members of the IEP team included J.G.'s teacher, occupational therapist, speech language pathologist, educational diagnostician, school psychologist, his parents, DAPA consultants,[21] and the District's director of special education. (R-29) The proposed goals and objectives were the result of compromises between the parents and other school members on the

---

[21]The Delaware Alternate Portfolio Assessment ("DAPA") is the State of Delaware assessment of students with severe cognitive disabilities in grades two through ten. As required by the IDEA, all students must be included in an assessment program when one is implemented by a state or school district. http://www.udel.edu/cds/dapa.

IEP team.  (R-39-40)  The proposed IEP is designed specifically for J.G. in a setting with seven other students, a teacher, and two paraprofessionals.  (R-19, 267)  Its curriculum is based upon the Syracuse Curriculum.  (R-20, 33, 35)

The administrative record reflects that J.G.'s parents did not produce evidence that the IEP was inappropriate.  Rather, it demonstrates the parents' belief that it is not rigorous enough.[22]  The disagreement stems from the parents' belief that the IEP is not challenging enough versus the other IEP members' desire to build upon J.G.'s strengths due to his failure to master certain goals and objectives in the 2007/2008 IEP.  (R-31, R-2078-87)  Plaintiffs disagree with the shift of focus advanced in the proposed 2008-2009 IEP.

The evidence of record reflects that J.G. did not progress as desired under the 2007/2008.  Hence, the proposed 2008/2009 IEP shifts focus from rote memorization and repetitive drills, that the parents prefer, to understanding information and using it in an effective manner with an eye towards J.G.'s independent function.  (R-20-22, 24, 29-32, 36-38,40-41, 44, 61-62, 66-68, 154, 88-89, 194-95, 206-07, 275-76, 368, 579-80, 2058-87)  It allows for the practice of skills in both school and community settings.  (R-2058-77)   During the administrative hearing, plaintiffs argued that it is their responsibility to promote J.G.'s independence and the District's responsibility to introduce academic concepts to J.G.  (R-2682)

---

[22]Testimony provided by various District witnesses led the hearing panel to conclude that the parents do not seem to understand J.G.'s limited capabilities in developing an IEP to meet his needs.

The court is mindful of plaintiffs' concerns that the proposed IEP will not provide J.G. with an appropriate education. The court, however, can find no reason to disagree with the hearing panel's decision that plaintiffs failed to establish that the 2008/2009 proposed IEP was not reasonably calculated to confer significant learning and a meaningful educational benefit upon J.G. Hence, it will not depart from the hearing panel's findings. For the above reasons, the court will grant the District's motion for summary judgment on the issue and will deny plaintiffs' motion for summary judgment on the same issue.

### 5. Reevaluation

Plaintiffs seek a reevaluation by way of an independent educational evaluation. They argue that J.G.'s classification, discussed hereinabove and perceived by them as illegal, requires an independent educational reevaluation at the District's expense in accordance with the Code of Federal Regulations and 20 U.S.C. § 1414. (D.I. 51) Plaintiffs indicate that a request for reevaluation was submitted on June 5, 2008, for a reevaluation in late January 2009, but it has not been addressed by the District. (*See* R-2167) On February 9, 2009, the District sent a request for permission to J.G.'s parents to evaluate J.G. (R-1888) The District indicates that as of April 22, 2010, the permission form has not been returned. (D.I. 34)

During the administrative hearing, the hearing panel accepted jurisdiction of the evaluation issue. On February 23, 2009, the hearing panel denied plaintiffs' request for an independent educational evaluation and found that the school psychologist had conducted an appropriate evaluation in the spring of 2008. (R2706-07)

-33-

There is no evidence to the contrary that the evaluation at issue was inappropriately performed. It is undisputed that the parents sought a reevaluation on June 5, 2008 to take place in January 2009, that the District sought permission to conduct the evaluation but, according to the District, the permission form was never returned. For the above reasons, the court will deny plaintiffs' request for a reevaluation and will grant the District summary judgment on the issue.

### 6. Remaining issues raised by the District

The District moves for summary judgment on the following issues, none of which were refuted by plaintiffs: First, the District argues that plaintiffs offered no evidence of expenses and, therefore, their claim for reimbursement to "make J.G. whole" must be denied. The court reviewed the record and finds no evidence of expenses requiring reimbursement. Next, the District contends that plaintiffs failed to offer evidence that private placement is appropriate for J.G. The record reflects that plaintiffs did not offer evidence that private placement is appropriate. In addition, and as discussed above, the record reflects that the District meets the needs of J.G. Third, the District argues that the parents' conduct warrants denial of relief because they acted unreasonably. While plaintiffs may have been overzealous at times, the court is mindful that the welfare of J.G. is of paramount concern to them. Moreover, a finding in favor of the District as to this issue makes no difference in the outcome of this case. Therefore, the court will deny as moot summary judgment on this issue. Finally, plaintiffs' request for attorney fees must be denied. Plaintiffs proceed pro se. Accordingly, there is no basis in the law to reimburse them for attorneys fees. *See Woodside v. School Dist. of Phila. Bd. of Educ.*, 248 F.3d 129 (3d Cir. 2001) (an attorney-parent cannot receive attorney

fees for work representing his minor child in proceedings under the IDEA); *accord Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419 (3d Cir. 2008).

## VI. CONCLUSION

Based upon the foregoing analysis, the court will grant the DDOE's motion to dismiss the claims raised against it. (D.I. 21) The court will deny as moot the motion for discovery, plaintiffs' motion for summary judgment as to the DDOE, the motion to stay, and the motion to properly title. (D.I. 9, 50, 54, 56) The court will grant the District's motion for summary judgment and will deny plaintiffs' motion for summary judgment as to the District. (D.I. 33, 51)

An appropriate order will issue.